## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

SHANNON GIBSON,              )
                                   )
          Plaintiff,          )
                                   )
v.                            )        Case No. 4:22-CV-00163-SPM
                                   )
OFFICER EMIR HADZIC, et al.,     )
                                   )
          Defendants.       )

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on the Amended Motion to Dismiss, or in the Alternative, to Strike Plaintiff's Third Amended Complaint filed by Defendants St. Louis County, Officer Emir Hadzic, and Officer Roger Holmes (collectively, "Defendants") (Doc. 43). The motion has been fully briefed, and the parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 33). For the following reasons, the motion to dismiss will be granted.

## <u>FACTUAL AND PROCEDURAL BACKGROUND</u>[1]

Plaintiff Shannon Gibson went to the post office in Afton, Missouri to mail some packages at 11:00 a.m. on February 10, 2020. After a brief conversation with

---

[1] The Court draws these facts from Plaintiff's Third Amended Complaint. (Doc. 15). In so doing, the Court, as it must, liberally construes the complaint in favor of Plaintiff and draws all reasonable

the desk clerk, he began to take video footage of the inside of the customer service lobby. The manager asked him to stop filming. When Plaintiff refused, the manager called the police and told them she could not get Plaintiff to stop filming and could not get Plaintiff out of the post office.

Officers Hadzic and Holmes responded to the post office. When the officers encountered Plaintiff, he told them he was a citizen journalist. He further stated that, according to federal regulations posted in the post office—specifically, 39 C.F.R. §232.1(i) (2020)—he had a First Amendment right to take video footage on postal property. When the officers asked Plaintiff why he was video recording the employees, Plaintiff responded he wanted to "test" and "educate" them. 3d Am. Compl., Doc. 15, at p. 5, ¶ 12. He stated the rules were "their rules" and he was "sorry they are ignorant of their own rules." *Id.*

Officer Holmes asked Plaintiff if he had been asked to leave. Plaintiff denied he had been asked to leave. The manager/supervisor allegedly made conflicting statements—stating at first that she had not asked Plaintiff to leave but then later, in response to questions from one of the officers, stating that she had asked Plaintiff to leave. At that point, Officer Hadzic asked the supervisor if she was asking Plaintiff to leave "right now." *Id.* at p. 6, ¶ 17. The Complaint asserts that this was "a trespass

---

inferences in his favor. *See Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010); *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010).

solicitation by Officer Hadzic"  and "was not a request to leave by the supervisor, a requirement under Missouri law." *Id.* at p. 6, ¶ 17. The Complaint further states, "Mr. Gibson was not told to leave until after the officers arrived. Officer Holmes was the first person to ask Mr. Gibson to leave, saying, 'You need to get out of here . . . It's private property.'" *Id.* at p. 6, ¶ 18.

Drawing all reasonable inferences in Plaintiff's favor, the Court infers from these assertions that Plaintiff was not asked to leave by the postal supervisor before the officers arrived. Instead, after the officers arrived, Officer Hadzic told Plaintiff he needed to leave. However, once asked whether she wanted Plaintiff to leave, the postal supervisor indicated that she did want Plaintiff to leave. The officers then (again) directed Plaintiff to leave the property.

Plaintiff refused to leave, stating he had a right to remain in the post office as it was public property. When directed to leave, Plaintiff asked what would happen if he did not leave, and the Officer responded that he would go to jail for trespassing. Plaintiff responded that he was not trespassing, that he had a right to be in a public area, and that he would sue the officers if they violated his First Amendment Right to freedom of the press

After Plaintiff threatened to sue the officers, Officer Hadzic asked to see Plaintiff's identification, informing Plaintiff that he was legally bound to show it. Plaintiff refused to give his identification to Officer Hadzic. Officer Hadzic placed

Plaintiff under arrest, forcibly grabbing and twisting his arms to place handcuffs on him. At some point after Plaintiff was handcuffed, the officers seized Plaintiff's identification and cell phone and detained Plaintiff.

On February 10, 2022, Plaintiff, representing himself, brought this action against St. Louis County (the "County") and Officers Hadzic and Holmes (the "Officers") pursuant to 42 U.S.C. § 1983. Plaintiff filed an Amended Complaint on February 28, 2022, a Second Amended Complaint on May 31, 2022, and a Third Amended Complaint on October 18, 2022. Plaintiff's Third Amended Complaint asserts, in eleven counts, that he is entitled to relief under 42 U.S.C. § 1983 because the County and the Officers violated his rights under the First and Fourth Amendments to the United States Constitution and his rights under the Missouri Constitution.

## **LEGAL STANDARD**

Defendants have moved to dismiss all counts under Fed. R. Civ. P. 12(b)(6). Plaintiff has opposed the motion. For a claim to survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept as true all the factual allegations in the

complaint, but it need not accept legal conclusions. *Iqbal*, 556 U.S. at 678. The Court must make "all reasonable inferences in favor of the nonmoving party." *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019). Additionally, "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

## **DISCUSSION**

In their motion, Defendants argue that all claims against them should be dismissed because Plaintiff has not stated a claim under § 1983. As a preliminary matter, the Court must address the question of what types of § 1983 claims Plaintiff is asserting. A § 1983 claim against a public official may be brought against the official in his individual capacity or in his official capacity. *See, e.g.*, *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). Individual-capacity claims and official-capacity claims "are different causes of action." *Id.* Thus, the Court begins by addressing whether Plaintiff has sued the Officers in their individual capacities, in their official capacities, or both.

In this case, Defendants correctly point out that the Third Amended Complaint fails to explicitly specify that Plaintiff is suing Officers Hadzic and Holmes in their individual capacities. As such, Defendants argue the Court should presume that the

Officers are sued in their official capacities and the claims against the Officers in their official capacities are to be considered "the same as [claims] against the County itself." *See* Defs.' Mem. Supp., Doc. 45, at p. 12 (citing *Egerdahl v. Hibbing Cmty. College*, 72 F.3d 615, 619 (8th Cir. 1995) (stating "If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims.")).

The law in the Eighth Circuit requires more than an ambiguous pleading to state an individual-capacity § 1983 claim. *Bake*, 501 F.3d at 924. The Eighth Circuit requires a "clear statement" or a "specific pleading" indicating that the plaintiffs are suing the defendants in their individual capacities. *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("[S]pecific pleading of individual capacity is required . . . ."); *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) ("[A] clear statement that officials are being sued in their personal capacities" is required.). *See also Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989) ("[S]ection 1983 litigants wishing to sue government agents in both capacities should simply use the following language: 'Plaintiff sues each and all defendants in both their individual and official capacities.'") (quoting *Rollins by Agosta v. Farmer*, 731 F.2d 533, 536 n. 3 (8th Cir. 1984)). The Eighth Circuit has adopted this "clear statement" requirement "[b]ecause section 1983 liability exposes public servants to civil liability and damages, . . . [and] only an express statement that they are being sued

in their individual capacity will suffice to give proper notice to the defendants." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Thus, when a plaintiff's complaint is silent or otherwise ambiguous about the capacity in which the plaintiff is suing the defendant, Eighth Circuit precedent requires courts to presume that the plaintiff brings suit against the defendants in only their official capacities. *Id.; Artis v. Francis Howell N. Band Booster Ass'n, Inc*, 161 F.3d 1178, 1182 (8th Cir. 1998).

The Court recognizes that, because Plaintiff is appearing *pro se,* his complaint is held to a less stringent standard than a complaint drafted by lawyers. *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *see also Whitson v. Stone Cty. Jail*, 602 F.3d 920, 922 n. 1 (8th Cir. 2010) ("[P]ro se litigants are held to a lesser pleading standard than other parties . . . .") (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008))*; Johnson v. Arden,* 614 F.3d 785, 798 (8th Cir.2010) (construing a *pro se* litigant's pleadings broadly). However, "[a]lthough pro se complaints should be liberally construed, this requirement that individual-capacity claims be specifically plead still applies to pro se plaintiffs," *Pessima v. Allen,* No. 4:19-CV-04200-RAL, 2021 WL 1691143, at *3 (D.S.D. Apr. 29, 2021) (citations omitted).

Even when this less stringent standard is applied, the Court finds the Third Amended Complaint cannot reasonably be construed to assert individual-capacity

claims. Throughout the Third Amended Complaint, including in counts specifically naming the Officers, Plaintiff repeatedly asserts the officers were acting "in their capacity as police officers" "with actual and/or apparent authority attendant thereto" and were acting "pursuant to the customs, usages, practices, procedures and the rules of St. Louis County." *See, e.g.,*  3d Am. Compl., Doc. 15, Count II, ¶ 97,  Count III, ¶ 105, Count IV, ¶ 115, Count V, ¶¶ 119-120, Count VI, ¶¶ 127-130, and Count VII, ¶¶ 141-143. As such, the Court finds that the Officers were sued only in their official capacities.

The Eighth Circuit has held that it is proper for a district court to dismiss a claim against an officer in his official capacity "as redundant of the claim against the [municipality]." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citing *Baker*, 501 F.3d at 925).  *See also, e.g., Taylor v. St. Louis Cmty. Coll.*, No. 4:18CV00272 SNLJ, 2018 WL 5078360, at *6 (E.D. Mo. Oct. 18, 2018) ("Because plaintiff has asserted this claim against defendant Gee in his official capacity and also against [St. Louis Community College], the court finds the claim redundant and must be dismissed."). Because Plaintiff's claims against Officers Hadzic and Holmes in their official capacities are functionally claims against the County, the Court agrees with Defendants that the claims against the Officers in Counts I-IV, V-VII, X and XI are redundant and should be dismissed.

Although the Court finds the official-capacity claims against Officers Hadzic and Holmes should be dismissed, the Court acknowledges that the way the Complaint is structured suggests Plaintiff likely intended to sue the Officers in both their individual and official capacities. The Court further acknowledges that Plaintiff could easily cure the individual-capacity deficiencies in his Complaint by reciting the required language. As such, for the sake of judicial economy, the Court will consider whether, assuming *arguendo* that Plaintiff met the individual-capacity pleading requirements, the Third Amended Complaint states a claim for which relief can be granted.

The Court will first address the individual-capacity claims against the Officers in Section I of this Memorandum Opinion. The Court will address the claims against the County in Section II.

## I.   INDIVIDUAL-CAPACITY CLAIMS AGAINST OFFICERS HADZIC AND HOLMES

In Counts I–IV, Plaintiff asserts Officers Hadzic and Holmes and the County violated his rights under the First Amendment by unlawfully preventing Plaintiff from recording in a post office lobby (Count I), retaliating against Plaintiff for engaging in protected conduct by detaining him for recording in a post office (Count II), retaliating against Plaintiff for engaging in protected conduct by seizing Plaintiff's identification (Count III), and retaliating against Plaintiff for engaging in protected conduct by seizing Plaintiff's phone (Count IV).

In Counts V–VII, Plaintiff asserts the Officers and the County violated his rights under the Fourth Amendment by unlawfully seizing his phone without probable cause (Count V), unlawfully seizing his identification without probable cause (Count VI), and unlawfully detaining Plaintiff without probable cause or justification (Count VII). In Count XI, Plaintiff further asserts the Officers and the County violated his Fourth Amendment rights by using excessive force when they seized him at the post office.[2]

Finally, in Count X, Plaintiff asserts the Officers and the County violated his rights under the Missouri Constitution in violation of § 1983.

### A. Plaintiff's § 1983 Claims Against the Officers Based on Arrest (Counts I–IV and V–VII)

Defendants argue, among other things, that Plaintiff's claims in Counts I–IV and V–VII for First and Fourth Amendment violations based on his arrest should be dismissed because the Third Amended Complaint demonstrates, on its face, that the officers had probable cause to arrest Plaintiff. Defendants argue, in the alternative, that even if Plaintiff's complaint sufficiently alleges First and Fourth Amendment violations, the officers are entitled to qualified immunity. The Court will address each argument in turn.

---

[2] Count XI is titled "Violation of Civil Rights Under 42 U.S.C. § 1983 (Fourth, Eighth, and Fourteenth Amendments)". However, considering all allegations in the Third Amended Complaint, the Court construes Count XI as an excessive force claim arising under the Fourth Amendment.

### 1. The Complaint, on its face, demonstrates there was probable cause.

To prevail on either his First or Fourth Amendment claims, Plaintiff must plead and prove that Officers Hadzic and Holmes had no probable cause to arrest him. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1724-25 (2019) (plaintiff bringing a First Amendment claim based on arrest must "plead and prove the absence of probable cause for the arrest . . . Absent such a showing, a retaliatory arrest claim fails.")*; Quraishi v. St. Charles Cty.*, 986 F.3d 831, 835 (8th Cir. 2021) ("To prevail on either of their First or Fourth Amendment claims, the [plaintiffs] must show that [the officer] had no probable cause") (citing *McCabe v. Parker*, 608 F.3d 1068, 1075 (8th Cir. 2010) (lack of probable cause is a necessary element for First and Fourth Amendment claims arising out of an arrest)). Defendants argue Plaintiff cannot meet the no-probable-cause pleading requirement because, based on the facts alleged in the complaint, the officers had probable cause to believe Plaintiff was committing trespass.

Under Missouri law, a person commits the class B misdemeanor offense of trespassing in the first degree if they knowingly enter *or unlawfully remain* in a building or inhabitable structure or upon real property. Mo. Rev. Stat. § 569.140.1. *See also State v. Guess,* 804 S.W.2d 57, 58 (Mo. App. W.D. 1991) (evidence that officer made three attempts to get arrestee to leave police station constituted "sufficient evidence to show a revocation of [the arrestee's] privilege to be at the

public place" and to support a charge of trespass by knowingly remaining unlawfully in a building in violation of Mo. Rev. Stat. § 569.140). *See also* St. Louis County, Mo. Rev. Ordinances § 716.150 (making it a violation for any person without lawful authority, or without the express or implied consent of the owner or agent, to enter any building or enter on any enclosed or improved real estate, lot or parcel of ground in St. Louis County; or being upon the land of another, to fail or refuse to leave the same when requested so to do by the person lawfully in possession thereof, his agent or representative).

Plaintiff's Third Amended Complaint repeatedly asserts Defendants lacked probable cause for detaining him. However, the Court need not accept Plaintiff's unsupported legal conclusions. *See Iqbal*, 556 U.S. at 678. "An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011)  (quoting *Fisher v. Wal-Mart Stores, Inc.,* 619 F.3d 811, 816 (8th Cir. 2010)). Probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

Focusing on the plausible facts alleged in the complaint, Officers Hadzic and Holmes went to the post office in response to a 9-1-1 call from the post office

supervisor, who reported that Plaintiff was being "unreasonable" and was refusing to stop filming and refusing to leave. By Plaintiff's own account in the complaint, after the officers arrived at the post office, they confirmed with the supervisor that she wanted Plaintiff to leave. Despite being told by both the supervisor and the officers to leave the post office, Plaintiff refused, claiming he had a right to be on public property. Plaintiff's complaint even alleges Officer Holmes warned him that if he did not leave the post office, he would go to jail for trespassing.

The foregoing facts show that, under the totality of the circumstances known to the officers, the officers had probable cause to believe Plaintiff was engaged in the crime of trespass. Thus, Plaintiff's claims for First and Fourth Amendment violations based on his arrest fail as a matter of law.[3] *See Nieves,* 139 S. Ct. at 1728 (holding the existence of probable cause precluded Plaintiff's First Amendment retaliatory arrest claim); *White,* 865 F.3d at 1074 ("A warrantless arrest does not

---

[3] The Court acknowledges that in opposing Defendants' motion to dismiss, Plaintiff disputes that he was arrested for trespassing and attempts to controvert the allegations in his Third Amended Complaint with additional information and material not included in the Third Amended Complaint. *See* Doc. 51. However, "[i]t is well established that a plaintiff cannot add factual allegations to the complaint by raising them in his memorandum in opposition to a motion to dismiss." *Godfrey v. Clayco, Inc.,* 4:20CV912 RLW, 2021 WL 2915068 *3 n.3 (E.D. Mo. July 12, 2021) (citing *Gallagher v. City of Clayton,* 699 F.3d 1013, 1022 (8th Cir. 2012) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")). Assertions in Plaintiff's opposition brief that cannot be reasonably inferred from the facts in the Third Amended Complaint are not properly before the Court and will not be considered by the Court in ruling on the Motion to Dismiss.

violate the Fourth Amendment if it is supported by probable cause.") (quotation marks omitted).

### 2. *The Officers are entitled to qualified immunity.*

Defendants argue, in the alternative, that Plaintiff's claims against the Officers in Counts I–IV and V–VII for First and Fourth Amendment violations based on his arrest should be dismissed because the Officers are entitled to qualified immunity. The Supreme Court has held "[t]he doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Hernandez v. Mesa*, 582 U.S. 548, 554 (2017) (quotation marks omitted). To determine whether a defendant is entitled to qualified immunity, the Court must conduct a two-step inquiry that asks, in any order, (1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the alleged deprivation. *Solomon v. Petray*, 795 F.3d 777, 786 (8th Cir. 2015); *Quraishi,* 986 F.3d at 835.

The Eighth Circuit has held that an officer accused of making a wrongful arrest is entitled to qualified immunity if there was at least "arguable probable cause" for the arrest. *Quraishi,* 986 F.3d at 835 (quoting *Peterson v. Kopp,* 754 F.3d 594, 598 (8th Cir. 2014), *abrogated on other grounds by Nieves,* 139 S. Ct. at 1722,

*abrogation recognized in Laney v. City of St. Louis*, 56 F.4th 1153, 1157 n.2 (8th Cir. 2023)); *White,* 865 F.3d at 1074. "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." *Quraishi,* 986 F.3d at 836 (quotation marks omitted). Under Eighth Circuit precedent, if the officers in this case had a "mistaken but objectively reasonable belief that [Plaintiff] had committed a criminal offense, [Plaintiff] lose[s]." *Id.* (citing *Smithson v. Aldrich,* 235 F.3d 1058, 1062-63 (8th Cir. 2000) (officers entitled to qualified immunity on First and Fourth Amendment claims because they had arguable probable cause).

Here, even assuming the facts alleged in the Third Amended Complaint did not establish the existence of probable cause, the Officers are entitled to qualified immunity because, given the facts alleged, they had arguable probable cause to believe Plaintiff was engaged in criminal trespass when Plaintiff refused to leave the post office after the postal supervisor indicated that she wanted him to leave and after the officers directed him to leave.

For the foregoing reasons, even if Plaintiff sufficiently alleged individual-capacity claims against Officers Hadzic and Holmes for First and Fourth Amendment violations stemming from his arrest, those claims fail as a matter of law because the existence of probable cause or arguable probable cause is an insuperable bar to relief.

### B.  Plaintiff's § 1983 Claim Against the Officers Based on Excessive Force (Count XI)

Defendants contend that, based on the facts alleged in the complaint, Count XI fails to state a claim for excessive force. In Count XI, Plaintiff alleges the officers violated his rights under the Fourth, Eighth, and Fourteenth Amendments by using "excessive force on Plaintiff without a warrant or any lawful basis." Specifically, Plaintiff alleges that the officers grabbed his arms, handcuffed him, forcibly seized him, and hurt him by twisting his arm.  The Supreme Court has held that claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, of a free citizen "are properly analyzed under the Fourth Amendment's due process standard." *Graham v. Connor,* 490 U.S. 386, 388 (1989).

The test for assessing whether there has been a violation of the right to be free from excessive force under the Fourth Amendment is "whether the amount of force used was objectively unreasonable under the particular circumstances." *Vester v. Hallock*, 864 F.3d 884, 887 (8th Cir. 2017) (quotation marks omitted). *Accord Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006) (quoting *Littrell v. Franklin*, 388 F.3d 578, 583 (8th Cir. 2004)). The reasonableness of a particular use of force is determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "[T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain,

and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396 (citation omitted). Rather, the court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id. Accord Wertish v. Krueger*, 433 F.3d 1062, 1066 (8th Cir. 2006) (quoting *Graham*, 490 U.S. at 396).

Here, for the reasons previously discussed, the facts alleged in the complaint demonstrate the officers had probable cause, or arguable probable cause, to believe Plaintiff was committing trespass. As such, there was a lawful basis for Plaintiff's arrest. The facts in the complaint also suggest Plaintiff was actively resisting arrest. Although the complaint alleges Plaintiff was, generally, calm, and respectful during his interactions with the officers, the complaint also specifically alleges that before he was handcuffed, the Plaintiff refused to stop filming when told to stop filming by the postal supervisor; refused to leave when told to leave; and refused to show his identification to the officers when directed to do so. Given the circumstances, a reasonable officer could have viewed Plaintiff's conduct as resisting the officers' commands and could have reasonably believed that the level of force used here—

grabbing and twisting Plaintiff's arm while placing him in handcuffs—was necessary to place Plaintiff under arrest for trespass.

Even if the facts alleged in the complaint show that the level of force used was objectively unreasonable, the officers are entitled to qualified immunity. As set out above, to overcome qualified immunity, Plaintiff must present sufficient facts to show not only that the officers' conduct violated a constitutional right, but also that the right was clearly established at the time of the alleged violation. *Quraishi,*986 F.3d at 835. A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id.*

"Broadly speaking, the right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment." *Peterson,* 754 F.3d at 600 (internal quotation marks omitted). "That said, while there is no requirement that the very action in question has previously been held unlawful, Plaintiff can succeed only if earlier cases give [the officers] fair warning that [their] alleged treatment of [Plaintiff] was unconstitutional." *Id.* (internal quotations omitted). The Court is aware of no cases that would have given the officers in this case fair warning that they were engaging in unconstitutional conduct by using the amount of force described in the complaint. Based on the circumstances alleged in the complaint, the officers used a reasonable amount of force to handcuff the Plaintiff, who had refused

to comply with the officers' directives and had been warned he would be arrested for trespass if he did not leave the premises.

### C. Plaintiff's § 1983 Claim Based on Violation of the Missouri Constitution (Count X)

Count X asserts a § 1983 claim for violation of Article I, Section 2 of the Missouri Constitution. However, § 1983 provides a remedy only for violation of rights secured by federal statutes or the United States Constitution. *See Gunderson v. Schlueter,* 904 F.2d 407, 409 (8th Cir. 1990). *See also Moody v. Hicks,* 956 S.W.2d 398, 402 (Mo. Ct. App. 1997) (rejecting a plaintiff's argument that a provision of the Missouri Constitution should be considered "self-executing," such that she could assert a claim for its violation; reasoning that claims for violations of the United States Constitution are cognizable only because Congress enacted legislation authorizing such suits (through § 1983) and that "[t]he Missouri General Assembly has not enacted similar legislation"). For these reasons, § 1983 cannot provide a basis for Plaintiff's claim in Count X.

## II.   CLAIMS AGAINST THE COUNTY (COUNTS I-IV, V-VII, VIII, IX & XI)

Counts I–IV, V–VII, and XI assert claims of First and Fourth Amendment violations stemming from Plaintiff's arrest and alleged use of excessive force by Officers Hadzic and Holmes. These counts will be dismissed for two independent reasons. First, as set forth above, Plaintiff has failed to allege any underlying constitutional violation that could give rise to municipal liability. Second, even

assuming, *arguendo*, that a constitutional violation occurred, Plaintiff has failed to allege any facts from which the Court can infer that, separate and apart from the officers, the County itself did anything to cause the alleged constitutional violations.

The Eighth Circuit "has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *Mahn v. Jefferson Cnty.* 891 F.3d 1093, 1099–100 (8th Cir. 2018) (quoting *Moore v. City of Desloge,,* 647 F.3d 841, 849 (8th Cir. 2011)). *See also Whitney v. City of St. Louis,* 887 F.3d 857, 861 (8th Cir. 2018) ("[A]bsent a constitutional violation by a city employee, there can be no § 1983 or *Monell* liability for the City."). Here, as discussed above, Plaintiff has failed to state a claim against either of the Officers for individual liability on any constitutional violation. Because there is no underlying violation of Plaintiff's constitutional rights, there can be no municipal liability for causing a violation of Plaintiff's constitutional rights. *See, e.g., Wahlers v. Nathaniel Hendren*, No. 4:19-CV-03064-SRC, 2020 WL 1934992, at *7 (E.D. Mo. Apr. 22, 2020) (""[The plaintiff's] § 1983 claim against the City (Count XI) must be dismissed because no municipal liability attaches under § 1983 absent an underlying constitutional violation.").

In Count VIII, Plaintiff asserts the County violated his rights under the First and Fourth Amendment by maintaining a custom or policy that permitted officers to prevent individuals from recording post office lobbies. A municipality may be liable

under § 1983 either where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" (a "policy" claim) or where the alleged constitution deprivation is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels" (a "custom" claim). *Monell*, 436 U.S. at 690-91.

To establish a claim based on a custom, the plaintiff must demonstrate "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016) (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014)). "[T]he pattern of unconstitutional conduct must be so pervasive and widespread so 'as to have the effect and force of law.'" *Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996)).

Although "[t]he Eighth Circuit has not directly addressed the quantum of 'continuing, widespread, persistent' conduct a plaintiff must allege to satisfy the *Iqbal* standard in this context," the Eighth Circuit has held "that isolated incidents do not suffice and that allegations of 'many' incidents do establish liability." *Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 895 (E.D. Mo. 2019) (citing *Wilson v. City of N. Little Rock*, 801 F.2d 316, 322-23 (8th Cir. 1996), & *Harris v. City of Pagedale*, 821 F.2d 499, 504 (8th Cir. 1987)). *See also Plamp v. Mitchell Sch. Dist. No.* 17-2, 565 F.3d 450, 460 (8th Cir. 2009) ("[T]hree concrete complaints . . . scattered over approximately twelve years and contain[ing] little in terms of content" were insufficient to show a widespread pattern of conduct at the summary judgment stage).

The complaint in this case does not even come close to satisfying the foregoing standards. Plaintiff has failed to plead facts in the complaint that would demonstrate the existence of either an official policy or widespread custom that caused a constitutional deprivation. All the facts alleged relate to the actions of the individual officers. Plaintiff's allegations concerning an official policy or custom are conclusory—they assert, without more, that "Defendant St. Louis County maintained a custom or policy that permitted officers to prevent individuals from recording post office lobbies." These facts do not sufficiently allege an official custom or policy and are mere labels and conclusions, which are inadequate to state

22

a claim. *Twombly*, 550 U.S. at 555; *Davis v. St. Louis County*, No. 4:14-CV-1563 CAS, 2015 WL 758218, at *12 (E.D. Mo. Feb. 23, 2015). Thus, Plaintiff has failed to state an unlawful policy or custom claim against the County.

In Count IX, Plaintiff asserts the County violated his First and Fourth Amendment rights by failing to properly train and supervise the officers. To state a claim against the County under § 1983 for a failure to train or supervise, Plaintiff must plead facts sufficient to show that (1) the County's officer-training practices were inadequate; (2) the County's failure to train was a result of deliberate and conscious choices it made, and (3) the County's alleged training deficiencies caused Plaintiff's constitutional deprivation. *Ulrich v. Pope County*, 75 F.3d 1054, 1061 (8th Cir. 2013). *See also Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010).  To satisfy this standard, the plaintiff must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the county can reasonably be said to have been deliberately indifferent to the need." *Id.* (quoting *City of Canton*, 4899 U.S. at 390). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). A court analyzes a claim for failure to

supervise the same way it analyzes a claim for failure to train. *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013).

Plaintiff's complaint falls far short of the pleading requirements to state a claim for failure to train. Plaintiff, again, fails to allege a pattern of constitutional violations like the incident in this case. Instead, the complaint focuses exclusively on the conduct of Officers Hadzic and Holmes during the single incident involving Plaintiff himself. Plaintiff also alleges no other facts from which it could be inferred that the need for more or different training was so obvious, or the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the County were indifferent to the need for more training or supervision. For these reasons, Count IX fails to state a claim for failure to train or supervise and will be dismissed.

## CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the Motion to Dismiss the Third Amended Complaint, filed by Defendant St. Louis County, Defendant Officer Emir Hadzic, and Defendant Officer Roger Holmes (Doc. 43) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs' claims (Counts I-XI) are **DISMISSED,** with prejudice.

24

**IT IS FURTHER ORDERED** that all other pending motions in this case are

**DENIED** as moot.


SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of September 2023.